ANTONIO MIRALLI, ETC., Plaintiffs and Appellees, *v.* FULLANA CORPORATION, Defendant and Appellant.

No. R-69-104.     Decided January 30, 1970.

324

*Rodríguez Ema, Rodríguez Ramón, Benítez Gautier & Segarra* and *José Antonio Luiña* for appellant. *Augusto Quiñones Guardiola* and *José Bravo Abreu* for plaintiffs.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Relying on the provisions of § 1372 of the Civil Code, 31 L.P.R.A. § 3840,[1] the purchasing spouses Antonio Miralli and Providencia Fernández filed an action against the vendor Fullana Corporation requesting indemnity, because the property sold was encumbered with a sewerage servitude not mentioned in the deed of sale. The Superior Court, San Juan Part, granted the complaint, and ordered defendant to pay

---

[1] "If the estate sold should be encumbered by any nonapparent burden or easement, not mentioned in the instrument, of such a nature that it must be presumed that the vendee would not have acquired it had he been aware thereof, he may request the rescission of the contract, unless he should prefer the proper indemnity.

"During a year, to be counted from the date of the execution of the instrument, the vendee may either institute the rescissory action or request the indemnity. After the lapse of one year, he can only demand such indemnity within an equal period, to be counted from the date on which the incumbrance or easement was discovered by him."

plaintiffs the sum of ten thousand dollars for damages. At the request of the defendant corporation we issued writ of review.

From the findings of fact of the trial court and from the documentary evidence presented and admitted[2] the following facts arise as indisputable facts: (i) That on September 26, 1960 the parties signed a private document designated as a "bilateral contract of sale" regarding lot No. 203 of block S of Las Américas Development, "as said lot appears drawn and numbered in a plan made by the CORPORATION," wherein the purchasers stated that "(i) *we have examined the plan mentioned in the description of the lot described* . . .;[3] (ii) . . .; (iii) we know the place and site of location of Las Américas Development; and (iv) we have knowledge of all those other facts necessary for a determination of the object of this contract" (Exh. 3, Plaintiffs) ; (ii) that in the Registry of Plats of the Registry of Property in Río Piedras a partial record plan for Las Américas Development was filed, according to report No. 61-L-1281 of the Planning Board certified on *December 19, 1960,* approving the segregation, among others, of lots 200 to 208, both inclusive, of block S;[4] (iii) that in said plan "there appears the layout of a 5 meter servitude in

---

[2] The transcript of the oral evidence was not sent. For the purpose of the decision of this appeal we shall rely on the findings of fact of the trial judge and *on the documentary evidence which appears in the record.*

[3] It refers to a plan of conditional recording admitted as plaintiffs' Exh. 2. In said plan lot 203 of block S appears with an area identical with that stated in the "bilateral contract of sale."

[4] Section 24 of the Planning and Budget Act, 23 L.P.R.A. § 25, which creates the Registry of Subdivision Plats in each one of the registry divisions, provides that the final subdivision plats—which by definition includes development of tracts of land, § 2, 23 L.P.R.A. § 2—shall be recorded in said registry. In connection with the record plans, see 23 R.&R.P.R. § 10–41, § 10–42 (partial record plans) and § 10–44. Subdivision (b) of § 10–44 provides that "Any restrictions and easements required by the Board for the subdivision, once approved, shall be registered as part of the record plans . . . ."

favor of P.R.A.S.A.[5] which affects lots number . . . two hundred and three . . . of Block S . . ." (Exh. 1, Plaintiffs) ; (iv) that through deed No. 138 of *February 15, 1961* before Notary Miguel Marcos Contreras the plaintiff spouses acquired by purchase from Fullana Corporation the aforementioned lot and the building erected therein for the price of $19,733.80, the proper record being entered on June 2, 1961; (v) that in the relation of encumbrances it was only stated that it was subject to restrictive building conditions, a servitude in favor of the Water Resources Authority and a mortgage in favor of the Banco Crédito y Ahorro Ponceño (Exh. 2, Plaintiffs) ;[6] (vi) that by an order entered on January 24, 1963 in case E-63-193, the Commonwealth acquired through condemnation for the benefit of the Puerto Rico Aqueduct and Sewer Authority a perpetual servitude of access and aqueduct for the construction of sanitary sewage system over a strip of land of the main property, which was recorded on *March 20, 1964* (Exh. 1, Plaintiffs) ;[7] (vii) that in August 1965 employees of the Aqueduct and Sewer Authority raised to ground level a cleanout hole of a little more than a meter in diameter which up to that moment had been hidden in plaintiffs' lot, for the purpose of cleaning a sewerage pressure line which was obstructed; (viii) that said pressure line of twenty-four inches in diameter was buried at thirteen feet from the sur-

---

[5] The initials stand for Puerto Rico Aqueduct and Sewage Administration.

[6] These were the same liens mentioned in the statement of the deed. In the execution the conveyance of the property was verified, "free from encumbrances, with the exception of the servitude, and the restrictive development conditions stated and known to the Purchaser."

[7] The servient tenement was described thus: "Urban: Strip of land located in the Ward Monacillos in the municipal area of Río Piedras, San Juan, Puerto Rico, with an area of 0.105 thousandth of a cuerda, equivalent to 414.051 square meters; bounded on the north and the west, by more land of the main property; on the west in part by the main property; on the east in part by the main property and by the river bed of the Río Piedras river, and on the south, by State Road No. 41."

face, and crosses in part the northern boundary of said lot; and, (ix) that neither before nor at the time the sale was executed were plaintiffs "informed" by defendant that the property was encumbered by a sewerage servitude in favor of the Aqueduct and Sewer Authority.

In its conclusions of law the trial court referred to: (1) the presumption that the property was free from encumbrances and to defendant's obligation, in an action of denial of servitude, to establish as a defense the existence of the same; (2) the continuous and nonapparent character of the sewerage servitude; and, (3) the vendor's obligation to indemnify "for the existence of the pressure lines, the clean-out hole, and the sewerage pipes hidden beneath the surface of the property . . . without any visible or undoubted sign revealing its existence, [which] constitutes a nonapparent servitude of which defendant had and has knowledge, but, however, did not mention it in the deed of sale. . . ."

1. It should be noted, immediately, that any reference to the freedom from encumbrances and to defendant's consequent obligation in an action of denial of servitude to establish the existence of the servitude is extraneous to the controversy. Neither did the pleadings nor the evidence justify it, for the contractual breach which is sought to be redressed originates clearly from the relation of purchaser and vendor of the parties. Even more when the action of denial should be directed against the alleged owner of the servitude which in this case is acknowledged to be the Aqueduct and Sewer Authority, and not the defendant corporation.

2. The requirements for the action mentioned in § 1372 of the Civil Code, *supra*, as we stated in *Pagán* v. *Heirs of Rivera*, 38 P.R.R. 583 (1928), are: (i) *the existence* of a nonapparent servitude; (ii) the failure to mention it in the deed; and (iii) the circumstance that the purchaser would not have acquired the property had he known of the encum-

brance.[8] It is derived from the vendor's obligation to warrant and it is directed to guarantee the peaceful possession of the thing sold, objecting to any material or juridical defect which impairs the useful possession of the same.

The physical nonapparent requirement depends on the servitude being exposed or revealed by external signs which confirm its existence. The doctrine is practically unanimous in recognizing likewise what is known as juridical appearance, situation which arises when the burden or encumbrance appears in the Registry. It is the appearance derived from the publicity of registries, that by legal presumption is considered known by all those who make contracts on the property. Castán states that "it is usually understood that it is also a necessary condition for the encumbrance not to appear in the Registry of Property, because, otherwise, the purchaser could have realized perfectly well the condition of the property, and if he is prejudiced he should impute such prejudice to himself."[9] Manresa,[10] Scaevola,[11] Puig Brutau,[12] De Diego,[13] and Borrell y Soler[14] agree with this view we adopted in *Mejía* v. *Mouriño*, 68 P.R.R. 614, 615 (1948). Ossorio Morales,[15] upon considering the interaction of this

---

[8] See, *Stella* v. *Blasini*, 65 P.R.R. 312 (1945) and *M. Grau & Sons* v. *Plaja*, 29 P.R.R. 664 (1921).

[9] 4 *Derecho Civil Español, Común y Foral* 108 (8th ed. 1956).

[10] X *Comentarios al Código Civil Español* 243 and 244 (5th ed. 1950).

[11] XXIII *Código Civil* 599.

[12] II-II *Fundamentos de Derecho Civil* 200 and 201.

[13] II *Instituciones de Derecho Civil Español* 171.

[14] 3 *Derecho Civil Español* 345.

[15] *Sobre una interpretación del art. 1483 del Código Civil*, 16 *Revista de Derecho Privado* 150, 152 (1929).

Pascual Lacal, in an article entitled *Interpretación del Art. 1483 del Código Civil*, 16 *Revista de Derecho Privado* 94 (1929), had held that the recording of an encumbrance did not prevent the exercise of the rescissory action, on the grounds that the Mortgage Law is exclusively a third-parties law, inapplicable to the juridical relations established by the contracting parties. Considering this position, Manresa, *op. cit.* at p. 244, calls the

provision with the principle of publicity which characterizes the Mortgage Law, points out that "Summarizing then, all we have said, we believe that Art. 1483 of the Civil Code [§ 1372 of the Puerto Rico Civil Code] is only applicable when neither the owner of the encumbrance nor the purchaser had recorded their right, *and that the rescissory action of said article could not be effectively exercised when one of those rights is recorded.* If the burden is recorded, the purchaser cannot legally allege that he does not know about it; if the burden is not recorded in the Registry, the purchaser who has recorded his title cannot allege injury or prejudice of any kind, basic condition for the vendor to be bound to give a warranty." There is no doubt either that if by any means the purchaser is aware of the existence of the encumbrance, be it recorded or not, the rescissory action would be prohibited.

Under the applicable law, as it has been set forth, the action filed cannot prosper. Accepting that the so-called sewerage servitude does not have juridical appearance because it was not recorded, the plaintiff purchasers having previously recorded their title, this prejudices the owner of the unrecorded right of servitude; and, the purchasers would not have to bear the encumbrance being able to resort to the action of denial of servitude against the owner of the alleged dominant tenement. On the other hand, at the time plaintiffs acquired the property there was already in the Registry of Plats of the Registry of Property an entry of the layout of a five meter servitude in favor of the Aqueduct and Sewer Authority which specifically affected the lot they purchased, and they were attributed the knowledge of this entry. *Gaztambide* v. *Heirs of Ortiz,* 70 P.R.R. 388, 403 (1949); Martínez

---

attention to the fact that § 1537 of the Spanish Civil Code, identical in its text with § 1427 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3961, precisely provides that "All that is prescribed in this part [it refers to the contract of sale] is to be understood as subject to the provisions of the Mortgage Law, with respect to real property."

Irizarry, *El Principio de Fe Pública Registral en Puerto Rico*, XXVIII *Rev. C. Abo. P.R.* 719, 731 (1968). This was the same plan which the purchasers stated *"we have examined"* before the execution of the "bilateral contract of sale" and in which there appears clearly outlined in broken lines the strip of land to be used for the installation of the sanitary sewage system, with reference to the legend "5.0 M. P.R.A.S.A. Right of Way."

■ It could be argued that plaintiffs relied on the vendor's assertion that, with the exception of other burdens, the property was free from liens or encumbrances, fact which would relieve it from the registry investigation, *Sánchez* v. *Coll*, 69 P.R.R. 863, 869 (1949). But to this respect it is important to recall that at the time of the sale the right of servitude as provided by law[16] had not been duly established, and that therefore, the vendor could not mention it[17] when he set forth the encumbrances in the statement of the deed. *Cf. Benet* v. *Registrar*, 65 P.R.R. 460 (1945).

The judgment rendered by the Superior Court, San Juan Part, will be reversed, and the complaint will be dismissed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Hernández Matos did not participate herein.

---

[16] Pursuant to § 475 of the Civil Code, 31 L.P.R.A. § 1653, continuous and not apparent servitudes can only be acquired by virtue of a title, and, in some cases, by any apparent sign, § 477 of the Civil Code, 31 L.P.R.A. § 1655.

[17] An attempt has been made to show that on a date subsequent to the sale the Aqueduct and Sewer Authority acquired the servitude through condemnation. At first sight, the description of the condemned parcel does not seem to be in accordance, especially on account of its boundaries of the river Río Piedras and State Road No. 41, with that of the servitude considered herein.